## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BATH AUTHORITY, LLC
d/b/a DREAMLINE,

           *Plaintiff,*

   v.

ANZZI LLC,

           *Defendant.*

CIVIL ACTION
NO. 18-00834

**PAPPERT, J.**                                                                    **October 19, 2018**

### MEMORANDUM

      Bath Authority LLC d/b/a DreamLine sells bath and shower products. It sued
Anzzi LLC for infringing on its "CAVALIER" trademark and misappropriating content
directly from DreamLine's website and promotional materials. DreamLine asserts
eight claims against Anzzi: (1) false advertising under 15 U.S.C. § 1125(a)(1)(B); (2)
false designation of origin under 15 U.S.C. § 1125(a)(1)(A); (3) unfair competition under
15 U.S.C. § 1125(a); (4) common law trademark infringement; (5) trade dress
infringement under 15 U.S.C. § 1125(a); (6) common law unfair competition; (7)
conversion and (8) tortious interference with prospective economic advantage.
DreamLine voluntarily dismissed its common law misappropriation and unjust
enrichment claims. Anzzi now moves to dismiss for failure to state a claim, while
DreamLine moves to expedite discovery to determine whether additional defendants
should be joined in this suit. For the reasons that follow, the Court grants in part and
denies in part Anzzi's Motion to Dismiss and denies DreamLine's Motion to Expedite
Discovery.

I

A

Since 2006, DreamLine has manufactured and distributed high-quality shower doors, panels and related products under the "DREAMLINE" trademark. (Am. Compl. ¶¶ 14–15, ECF No. 23.) Each product is equipped with an installation manual, which includes photographs, drawings and written materials. (*Id.* at ¶ 21.) DreamLine's installation manuals, product catalogs and other marketing and promotional information can be found on its website and on the websites of its distributors, such as Home Depot and Lowes. (*Id.* at ¶¶ 17, 21.)

DreamLine alleges that it has devoted a substantial amount of resources to building its brand. (*Id.* at ¶ 21.) Specifically, DreamLine claims it has made continuous use of the CAVALIER mark for its frameless shower door since March 2016, promoting the mark through its website, catalogs, installation manuals, attendance at trade-shows and in-person appearances. (*Id.* at ¶¶ 24, 35–36.) DreamLine filed an application for federal registration of the CAVALIER mark on April 19, 2018. U.S. Trademark Application Serial No. 87,884,260 (filed Apr. 19, 2018). The mark was federally registered on October 2, 2018. CAVALIER, Registration No. 5,575,967.

In addition to its extensive advertising and sales, DreamLine alleges that its maintenance of premium quality standards has made its products unique and favorably known to consumers. (Am. Compl. at ¶ 130.) In particular, DreamLine claims that the DreamLine Aqua Lux, Aqua Uno, Enigma-X and Elegance have acquired distinctiveness from their allegedly innovative designs. (*Id.* at ¶¶ 129–49.)

A startup formed in April 2017, Anzzi sells competing bathroom and shower hardware, including a toilet under the name "CAVALIER." (*Id.* at ¶¶ 2, 26, 42.) DreamLine alleges that home improvement stores sell both Anzzi's CAVALIER Toilet and DreamLine's CAVALIER Shower Door and bundle them with other bathroom fixtures. (*Id.* at ¶ 44–45.) DreamLine claims that Anzzi's use of the CAVALIER mark for toilets has created a false appearance of association between DreamLine's CAVALIER frameless door and Anzzi's CAVALIER toilet. (*Id.* at ¶ 47.)

DreamLine asserts that Anzzi's alleged infringement and misappropriation extends to its shower doors and promotional materials. Namely, the Anzzi Herald, Grand, Madam, Don and Duke shower doors allegedly infringe upon the protectable trade dress rights of DreamLine's shower doors. (*Id.* at ¶¶ 129–49.) DreamLine also contends that Anzzi "reproduced photographs, drawings and written text verbatim from DreamLine's installation manuals, catalogs and website." (*Id.* at ¶ 27.) Anzzi allegedly copied drawings for models of shower doors that it does not market or sell. (*Id.* at ¶ 29.)

Anzzi's alleged unfair trade practices have diminished DreamLine's reputation and diverted sales. (*Id.* at ¶¶ 31, 33–34.) As a result, DreamLine seeks both injunctive relief and damages. (*Id.* at 51–52.)

B

DreamLine filed its Complaint against Anzzi in the Bucks County Court of Common Pleas on February 6, 2018. (Notice of Removal, Ex. A ("Compl.") ¶¶ 13–14, ECF No. 2.) Anzzi timely removed the case on February 26, 2018, (Notice of Removal ¶¶ 2–6), and subsequently filed a Motion to Dismiss on March 19, 2018, (ECF No. 16). DreamLine amended its complaint on April 23, 2018. On May 29, 2018, Anzzi filed a

second Motion to Dismiss.  (ECF No. 26.)  On July 20, 2018, DreamLine moved to expedite discovery.  (ECF No. 31.)

## II

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, it must "take note of the elements the plaintiff must plead to state a claim."  *Id.* (quoting *Iqbal*, 556 U.S. at 675).  Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth."  *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v.*

*President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786–87).

The plausibility standard, however, "does not impose a heightened pleading requirement" and does not require a plaintiff to plead specific facts. *Id.* In other words, "courts cannot inject evidentiary issues into the plausibility determination." *Id.* The Third Circuit has also made it clear that "at least for purposes of pleading sufficiency, a complaint need not establish a *prima facie* case in order to survive a motion to dismiss" because a "prima facie case is an evidentiary standard, not a pleading requirement and hence is not proper measure of whether a complaint fails to state a claim." *Connelly*, 809 F.3d at 789 (internal quotations and citations omitted). Instead, a plaintiff should plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements." *Id.* (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

### III

The parties group DreamLine's eight claims into three categories. First, DreamLine's Lanham Act claims relate to the CAVALIER mark.[1] These claims include:

---

[1]      The Lanham Act, codified at 15 U.S.C. §1125(a), provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

false advertising under 15 U.S.C. § 1125(a)(1)(B); false designation of origin under 15 U.S.C. § 1125(a)(1)(A); unfair competition under 15 U.S.C. § 1125(a) and common law trademark infringement. Second, DreamLine's trade dress infringement claim under 15 U.S.C. § 1125(a) relates to Anzzi's alleged copying of four of DreamLine's shower doors. Third, DreamLine's state law claims of common law unfair competition, conversion and tortious interference with prospective economic advantage pertain to Anzzi's alleged misappropriation of DreamLine's product manuals.

A

i

DreamLine's false advertising claim is a false designation of origin claim in disguise. Subsection (a)(1)(B) of the Lanham Act forbids "commercial advertising or promotion" that "misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]" *Parks LLC v. Tyson Foods, Inc.*, 863 F.3d 220, 226 (3d Cir. 2017) (citing 15 U.S.C. § 1125(a)(1)(B)); *see Kehoe Component Sales Inc. v. Best Lighting Prods., Inc.*, 796 F.3d 576, 590 (6th Cir. 2015) ("Absent a false statement about geographic origin, a misrepresentation is actionable under § 1125(a)(1)(B) only if it misrepresents the characteristics of the good itself—such as its properties or capabilities. The statute does not encompass misrepresentations about the source of the ideas embodied in the

---

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

        shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

object (such as a false designation of authorship)[.]") (internal quotation marks and citation omitted).

The Third Circuit Court of Appeals in *Parks* determined that the plaintiff's false advertising claim was "a false association claim and nothing more." *Parks*, 863 F.3d at 227.[2] First, the plaintiff alleged that the defendant's use of "PARK'S FINEST" for frankfurters falsely implied that it was related to the plaintiff's "PARKS" mark for sausages—"[i]n other words, PARK'S FINEST is only misleading in the way that plaintiff suggests if a consumer makes the connection between PARK'S FINEST and PARKS and has in mind a pre-existing association between PARKS and high quality products." *Id.* The court held that this did not constitute a false advertising claim. *Id.*

The plaintiff next contended that the name PARK'S FINEST was misleading because it implied to consumers that the product is a "sausage when in reality it is a frankfurter—an item consumers may see as inferior." *Id.* The Third Circuit found that "[u]nless a consumer knows that PARKS is a mark for sausages, the name PARK'S FINEST does not carry any such implications. At bottom, then, this too is a false association claim." *Id.* The court noted that because the "packaging for PARK'S FINEST displays 'a factually accurate, unambiguous statement' that the product is a frankfurter, '[n]o reasonable consumer could be misled by those statements, and the rest of the label does not put those statements in doubt.'" *Id.* Finally, the Third Circuit clarified that the plaintiff's argument regarding origin failed because subsection (a)(1)(B) focuses on statements that are false with regard to "geographic origin" and not other types of "false designation[s] of origin." *Id.* at 228.

---

[2] The Third Circuit in *Parks* chose to refer to the plaintiff's false designation of origin claim as a false association claim. 863 F.3d at 226.

DreamLine's allegations regarding Anzzi's use of the CAVALIER mark mirror the plaintiff's arguments in *Parks* and DreamLine fails to state a false advertising claim. In its Amended Complaint, DreamLine alleges:

> Defendant's use of the CAVALIER name and DreamLine Trade Dress implies that Defendant's products are equivalent or identical to Plaintiff's products. These false and misleading advertising claims are material to consumer purchasing decisions and have caused or will cause actual consumer confusion regarding the connection between legitimate DreamLine products and Defendant's products.

(Am. Compl. ¶¶ 171–72). This is a false designation of origin claim "and nothing more." *Parks*, 863 F.3d at 226. DreamLine argues that Anzzi "misrepresents the characteristic of the good[s]" by marketing its CAVALIER Toilet as the "Latest in Modern Technology," (Mem. Opp'n Mot. Dismiss at 23, ECF No. 28), a statement similar to DreamLine's own marketing of its CAVALIER Shower Door, (Am. Compl. ¶¶ 37–38). But Anzzi clearly and unambiguously states that its product is a toilet. (Am. Compl. ¶¶ 41–42). No reasonable consumer could be misled by those statements.

ii

The test for false designation of origin under the Lanham Act tracks the elements of a common law trademark infringement claim. *Parks*, 863 F.3d at 230. The test for common law trademark infringement is essentially the same as the test for unfair competition under the Lanham Act. *Tillery v. Leonard & Sciolla, LLP*, 521 F. Supp. 2d 346, 348 n.1 (E.D. Pa. 2007) (citing *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 (3d Cir. 1994)); *see also Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002) ("[A] false designation of origin claim [is] known more broadly as federal unfair competition, 15 U.S.C. § 1125(a)(1)(A)."). To prevail on any of these claims, a plaintiff must demonstrate that: (1) it has a valid and

legally protectable mark; (2) it owns the mark and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000).

With respect to the first prong, "[i]f the mark has not been federally registered or, if registered, has not achieved incontestability, then 'validity depends on proof of secondary meaning, unless the unregistered or contestable mark is inherently distinctive.'" *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 438 (3d Cir. 2000). DreamLine's application for federal registration of the trademark was filed on April 19, 2018 and was approved on October 2, 2018—about six months after it filed its Amended Complaint.[3] CAVALIER, Registration No. 5,575,967. Since the mark was unregistered when the Amended Complaint was filed, the validity of DreamLine's mark depends on whether the mark is inherently distinctive or, in the alternative, has a secondary meaning.

Marks are classified in categories of generally increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). The latter three categories are deemed inherently distinctive and are entitled to protection. *Id.* "The significant factor is not whether the word itself is common, but whether the way the word is used in a particular context is unique enough to warrant trademark protection." *Fisons Horticulture*, 30 F.3d 466, 478 (3d Cir. 1994) (quoting *Wynn Oil Co. v. Thomas,* 839 F.2d

---

[3]    The Court takes judicial notice of DreamLine's application for federal registration of the CAVALIER mark. *See Kos Pharmaceuticals, Inc. v. Andrx Corp.,* 369 F.3d 700, 705 n.5 (3d Cir. 2004) (taking judicial notice of a public record that was posted on the United States Patent and Trademark Office's website regarding the date that a notice of allowance was issued). Nonetheless, because the mark was pending federal registration when DreamLine amended its complaint and when DreamLine responded to Anzzi's Motion to Dismiss, (Mem. Opp'n Mot. Dismiss at 3), the mark is unregistered for purposes of the Court's analysis.

1183, 1190 n.4 (6th Cir. 1988)).  For instance, the Third Circuit has explained that the "words 'shell,' 'camel' and 'apple' are not uncommon, but they are arbitrary when applied to gasoline, cigarettes and computers, respectively."  *Id.*  Here, the CAVALIER mark would not be entitled to protection if it related to a knight, horseman or college basketball team, but CAVALIER is inherently distinctive as it relates to a shower door.

With respect to the second prong regarding ownership of an unregistered mark, "the first party to adopt a mark can assert ownership so long as it continuously uses the mark in commerce."  *Commerce Nat'l Ins. Servs., Inc.*, 214 F.3d at 438.  DreamLine has alleged that it continuously used the CAVALIER mark in commerce since March 2016 and promoted it through various marketing channels.  (Am. Compl. ¶¶ 24, 35– 36.) DreamLine has satisfied this prong at this stage in the proceedings.

The third prong—likelihood of confusion—is a factual question.  *A & H Sportswear*, 237 F.3d at 210.  The Third Circuit analyzes the *Lapp* factors from *Interspace Corp. v. Lapp. Inc.*, 721 F.2d 460 (3d Cir. 1983), to determine likelihood of confusion.  *Id.* at 214.  The Court need not, however, perform that inquiry at this time because, "[w]here the names are identical . . . the names in themselves are evidence of likelihood of confusion."  *Am. Plan Corp. v. State Loan & Fin. Corp.*, 365 F.2d 635, 639 (3d Cir. 1966).  DreamLine has sufficiently pled a likelihood of confusion because both DreamLine and Anzzi used the same word "CAVALIER" for their products.  Therefore, DreamLine's claims of false designation of origin under the Lanham Act, common law trademark infringement and unfair competition under the Lanham Act survive Anzzi's Motion to Dismiss.

B

To prevail on a claim for unregistered trade dress infringement under 15 U.S.C.

§ 1125(a), a plaintiff must prove: (1) the allegedly infringing design is non-functional;

(2) the design is inherently distinctive or has acquired secondary meaning and (3)

consumers are likely to confuse the source of the plaintiff's product with that of the

defendant's product. *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d

350, 357 (3d Cir. 2007). The party claiming trade dress protection must also articulate

the specific elements of its trade dress. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d

303, 309 (3d Cir. 2014).

Trade dress refers to the design or packaging of a product which serves to

identify the product's source. *See TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532

U.S. 23, 28 (2001). The purpose of trade dress protection is to "secure the owner of the

[trade dress] the goodwill of his business and to protect the ability of consumers to

distinguish among competing producers." *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d

348, 353 (3d Cir. 2003). However, "the law does not afford every combination of visual

elements exclusive legal rights." *Fair Wind Sailing*, 764 F.3d at 309. Instead, "trade

dress protection extends only to incidental, arbitrary or ornamental product features

which identify the product's source." *Shire US,* 329 F.3d at 353. A feature is

nonfunctional where it 'is unrelated to the consumer demand . . . and serves merely to

identify the source of the product' or business." *Fair Wind Sailing*, 764 F.3d at 311 (3d

Cir. 2014) (quoting *Prufrock Ltd., Inc. v. Lasater,* 781 F.2d 129, 133 (8th Cir. 1986)). By

contrast, a functional feature is one that is "essential to the use or purpose of the

article," "affects the cost or quality of the article," or, if kept from competitors, would

put them at a "significant non-reputation-related disadvantage." *TrafFix,* 532 U.S. at 33.

DreamLine's alleged trade dress is functional. DreamLine identifies glass panels, hinges and handles as protectable trade dress. (Am. Compl. ¶¶ 129–49.) For example, it alleges that the DreamLine Aqua Lux is "distinguishable from its glass door panel with a sail-like arcuate curve on one side connected at the opposite side to a rectangular glass panel via two hinges. The lower portion of the single glass door panel curves past 90 degrees before meeting the tub." (*Id.* at ¶ 134.) DreamLine similarly describes its other three shower doors claiming protection under the Lanham Act. (*Id.* at ¶¶ 136–49.) But these elements—glass panels, hinges and handles—are essential to the use and purpose of the doors, and DreamLine has not asserted that any of the allegedly unique features are "incidental, arbitrary or ornamental features which identify the product's source." *Shire US,* 329 F.3d at 353.

DreamLine argues that these various functional aspects of its shower doors combine to create something nonfunctional. (Mem. Opp'n Mot. Dismiss at 7.) The Third Circuit addressed this argument in *Fair Wind Sailing.* 764 F.3d at 311. It referenced *Clicks Billiards, Inc. v. Sixshooters, Inc.* in which the Ninth Circuit concluded that the functional elements in a pool hall, such as its counters and lighting, could amount to an overall nonfunctional look. *Id.*; *see* 251 F.3d 1252, 1261–62 (9th Cir. 2001). The Third Circuit did not find this reasoning applicable to the plaintiff in *Fair Wind Sailing*, who had failed to allege a cognizable trade dress by not explaining how the identified functional elements achieved a nonfunctional "composite tapestry of visual effects." *Id.* (quoting *Clicks*, 251 F.3d at 1259). That is the case here as well.

The Amended Complaint fails to allege how the glass panels, hinges and handles create a nonfunctional look and feel. Further, barring competitors from using glass panels, hinges and handles would place them at a significant practical disadvantage, where the availability of alternative designs seems unlikely.

C

DreamLine's state law claims of common law unfair competition, conversion and tortious interference with prospective contractual relations pertain to Anzzi's alleged misappropriation of DreamLine's product manuals. Anzzi argues that these state law claims are preempted by the Copyright Act.[4] To determine whether preemption under the Copyright Act applies to state law claims, the Third Circuit applies the "extra element" test. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 217–18 (3d Cir. 2002). Courts assess (1) whether the work is the appropriate subject matter of a copyright as specified in 17 U.S.C. §§ 102 and 103 and (2) whether the state law creates rights equivalent to the exclusive rights protected by the Copyright Act as set forth in 17 U.S.C. § 106. *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1027 (3d Cir. 2008).[5]

---

[4]     DreamLine does not own a valid copyright, but this has no effect on the Court's preemption analysis. *See* (Hr'g Tr. 48:2–3); *see also* 1 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 1.01[B][1] (Matthew Bender, ed., 2018) ("It is clear that failure to meet the required standards for federal protection will not negate federal pre-emption. Otherwise, noncompliance with the conditions to limited federal protection could lead to a more unlimited form of state protection. Such a result would roundly contravene not only the expressed legislative intent, but the very purpose of the pre-emption structure."); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1532–33 (S.D.N.Y. 1985) (conducting preemption analysis despite no federal copyright claims).

[5]     Copyright preemption does not affect claims brought under the Lanham Act. *See Facenda*, 542 F.3d at 1026 ("[T]he Copyright Code . . . does [not] limit any intellectual property rights from other federal statutes, which is why there is no question of preemption regarding the [plaintiff's] Lanham Act claim").

The first prong is satisfied here. The parties do not dispute that DreamLine's allegations that Anzzi copied its instruction manuals, diagrams and figures fall within the subject matter of copyright. *See* (Mem. Opp'n Mot. Dismiss at 18–20); 17 U.S.C. § 102(a) ("Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include . . . literary works [and] pictorial, graphic and sculptural works.")

Anzzi challenges DreamLine's claims under the second prong of the extra element test, arguing that these claims are fundamentally equivalent to a copyright infringement claim and therefore preempted. DreamLine counters that each of its claims contains an "extra element" that makes the claims qualitatively different from a copyright infringement claim. The Court addresses the parties' preemption arguments for each state law claim in turn.

i

A state law unfair competition claim that alleges "passing off" is not preempted by the Copyright Act, but a state law unfair competition claim that alleges "reverse passing off" is preempted. *Fun-Damental Too, Ltd. v. Universal Music Grp., Inc.*, No. 97-1595, 1997 WL 381608, at *4 (E.D. Pa. July 8, 1997). Passing off occurs when a "producer misrepresents his own goods or services as someone else's," whereas reverse passing off occurs when "[t]he producer misrepresents someone else's goods or services as his own." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 27 n.1 (2003) (citations omitted). The district court in *Fun-Damental* explained the difference between the two:

> If the defendants claim that [the plaintiff] is selling [the plaintiff's] products and representing to the public that they are defendants, that is passing off. If, by contrast, [the plaintiff] is selling [the plaintiff's] products and representing to the public that they are [the plaintiff's], that is *not* passing off. A claim that the latter activity is actionable because [the plaintiff's] product replicates the defendants, even if denominated "passing off," is in fact a disguised copyright infringement claim, and hence preempted.

1997 WL 381608, at *6 (emphasis in original). *See also Fasa Corp. v. Playmates Toys, Inc.,* 869 F. Supp. 1334, 1363 (N.D. Ill. 1994) (holding that "[t]he fact that the defendants were selling the allegedly infringing works under their own names—and, hence, implicitly misrepresenting the origin of the works or causing confusion in the consuming public—[does] not alter the analysis" that a state law claim "ultimately rest[ing] on the mere act of unauthorized copying" is preempted).

DreamLine relies upon a reverse passing off theory of unfair competition, alleging that Anzzi is "palming off instruction manuals, installation instructions, diagrams, figures, and other materials created by DreamLine . . . [and] is disparaging the DreamLine Products and services offered under the DREAMLINE brand by misleading Pennsylvania consumers as to the origin of the Manuals, installation instructions, diagrams, figures, and other materials created by DreamLine." (Am. Compl. ¶¶ 211–12.) DreamLine's unfair competition claim is preempted by the Copyright Act.

ii

A conversion claim requires proof of the following elements: (1) the deprivation of another's right in, or use or possession of, property; (2) without the owner's consent and (3) without lawful justification. *Rapid Circuits, Inc. v. Sun Nat. Bank*, No. CIV.A. 10-6401, 2011 WL 1666919, at *8 (E.D. Pa. May 3, 2011). In *Apparel Bus. Sys., LLC v.*

*Tom James Co.,* the district court determined that because the plaintiff's conversion claim arose from copying and misuse of its work, it was functionally equivalent to a copyright claim. 2008 WL 858754, at *18 n.9 (E.D. Pa. Mar. 28, 2008). *Cf. Stenograph, LLC v. Sims,* No. 99–5354, 2000 WL 964748 (E.D. Pa. July 12, 2000) (holding that a conversion claim involving unlawful possession of a software key that must be physically inserted into a stenography machine to use the software is not preempted). DreamLine's conversion claim arises from the alleged copying and misuse of its product manuals. (Am. Compl. ¶¶ 219–26.) DreamLine's conversion claim is therefore preempted by the Copyright Act because it is not qualitatively different from a copyright infringement claim.

iii

A plaintiff must prove the following elements to prevail on a claim for tortious interference with prospective economic advantage: (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant and (4) the occasioning of actual legal damage as a result of the defendant's conduct. *Crivelli v. Gen. Motors Corp.*, 215 F.3d 386, 394 (3d Cir. 2000) (citing *Strickland v. University of Scranton,* 700 A.2d 979, 985 (Pa. Super. Ct. 1997)). The Third Circuit has held that "if the parties are competitors, [the factfinder] must find that [the defendant] engaged in *independently actionable conduct* for it to find in favor of [the plaintiff] on the tortious interference claim." *Alpha Pro Tech, Inc. v. VWR Int'l LLC*, 984 F. Supp. 2d 425, 448–49 (E.D. Pa.

16

2013) (quoting *Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 219 (3d Cir. 2009) (emphasis in original).  In sum, "[i]n the absence of some evidence that [the defendant] engaged in independently actionable conduct, it is shielded from liability by the competition privilege, and thus . . .  the tortious interference claim against it cannot stand."  *Id.*

The Court need not discuss the preemption analysis because the claim fails as pled.  DreamLine alleges that Anzzi tortiously interfered with "Plaintiff's relationships with . . . customers, by misappropriating various design elements, proprietary materials, and content developed by Plaintiff, thus resulting in significant cost savings to Defendant, allowing Defendant to thus undercut prices from Plaintiff, and secure contracts for units and shelf space previously and/or anticipated to be secured by Plaintiff."  (Am. Compl. ¶ 232.)  As competitors in the bath and shower business, Anzzi must have engaged in independently actionable conduct for the Court to rule in favor of DreamLine.  The Amended Complaint does not allege any such behavior, and the Court dismisses this claim accordingly.

## IV

DreamLine moves to expedite discovery so it can determine if it should sue others as well.  Courts exercise discretion in managing the discovery process.  *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir. 1969).  Rule 26(d)(1) of the Federal Rules of Civil Procedure provides: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  Fed. R. Civ. P. 26(d)(1).  The Federal Rules "offer little guidance as to when it is appropriate to authorize expedited and/or early discovery."

*Kone Corp. v. ThyssenKrupp USA, Inc.*, No. 11-465, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011). District courts in the Third Circuit have applied two standards for evaluating such requests: an injunctive relief standard and a "good cause" standard. *Wiluna Holdings, LLC, v. Does 1-50*, No. 13-1143, 2013 WL 1336792, at *1 (E.D. Pa. Apr. 3, 2013); *see e.g.*, *Gucci Am., Inc. v. Daffy's, Inc.,* No. 00–4463, 2000 WL 1720738, at *6 (D.N.J. Nov. 14, 2000) (finding that the injunctive relief standard requires the moving party to demonstrate: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and the avoidance of the irreparable injury and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted). The prevailing approach in this Circuit is to apply the "good cause" or reasonableness standard to resolve motions for expedited discovery. *See Wiluna Holdings,* 2013 WL 1336792, at *2 (applying a reasonableness standard to plaintiff's motion for expedited discovery in a trademark infringement case); *Leone v. Towanda Borough*, No. 12-0429, 2012 WL 1123958, at *1–2 (M.D. Pa. Apr. 4, 2012) (recognizing the recent trend in the Third Circuit favoring the good cause standard).

The party seeking discovery must show that "the request is reasonable in light of the relevant circumstances." *Kone Corp.,* 2011 WL 4478477, at *4. Courts usually find good cause by weighing the plaintiff's need for expedited discovery against "the breadth of the discovery requests and the prejudice to the responding party." *Id*. Good cause has been found where a party seeks a preliminary injunction, where physical evidence may be consumed or destroyed, or where the case involves infringement or unfair

competition claims.  *Fonovisa, Inc. v. Does 1-9,* No. 07–1515, 2008 WL 919701, at *10 n.22 (W.D. Pa. Apr. 3, 2008).

DreamLine asserts that Spa World Corporation may have been involved in the misappropriation.  (Mot. Expedite Disc. at 3.)  Spa World's principal place of business is the same address as Anzzi and its owner, Joseph Schwartz, is Anzzi's President and managing member.  *See* (*id.*).  DreamLine argues that it cannot determine Spa World's involvement other than by seeking expedited discovery through its Motion.

DreamLine has not shown good cause for expedited discovery, particularly given that it waited until July 20, 2018, three months after filing its Amended Complaint and two months after Anzzi filed its Motion to Dismiss, to seek it.  The Court, in its discretion, denies the Motion.

An appropriate Order follows.

BY THE COURT:

*/s/ **Gerald J. Pappert***

GERALD J. PAPPERT, J.